# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| SCOTT MEYER,<br><br>  Plaintiff,<br><br>vs.<br><br>BRYAN MCKINLEY, JAMES DREW, CHRISTOPHER FOY, ANURADHA VAITHESWARAN, RICHARD DOYLE, CHRISTOPHER MCDONALD, EMILY PEDERSON, VICKI PEDERSON, BRIAN PEDERSON, JOHN SORENSON, WILLIAM MORRISON and EARL KAVANAUGH,<br><br>  Defendants. | No. 15-CV-2042-LRR<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

*I.*   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*   *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.*   *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
      *1.*   *The 12(b)(1) standard* . . . . . . . . . . . . . . . . . . . . . . *5*
      *2.*   *The 12(b)(6) standard* . . . . . . . . . . . . . . . . . . . . . . *6*
    *B.*   *The Motions to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
      *1.*   *Subject matter jurisdiction* . . . . . . . . . . . . . . . . . . . . *7*
      *2.*   *Judicial immunity* . . . . . . . . . . . . . . . . . . . . . . . . *11*
      *3.*   *Section 1985 conspiracy claims* . . . . . . . . . . . . . . . . *12*
    *C.*   *Sanctions for Frivolous Lawsuit* . . . . . . . . . . . . . . . . . . . . . *15*

**V.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## I. INTRODUCTION

The matters before the court are: Defendant Earl Kavanaugh's Motion to Dismiss for Failure to State a Claim ("Kavanaugh Motion") (docket no. 7); Defendants Emily Pederson, Vicki Pederson and Brian Pederson's (collectively, "Pederson Defendants") Motion to Dismiss for Failure to State a Claim ("Pederson Motion") (docket no. 8); Defendants Richard Doyle, James Drew, Christopher Foy, Christopher McDonald, Bryan McKinley and Anuradha Vaitheswaran's (collectively, "State Defendants") Motion to Dismiss for Failure to State a Claim ("State Motion") (docket no. 9); and Defendants William Morrison and John Sorenson's (collectively, "Counsel Defendants") Motion to Dismiss for Failure to State a Claim ("Counsel Motion") (docket no. 11) (collectively, "Motions to Dismiss").

## II. RELEVANT PROCEDURAL HISTORY

On June 5, 2015, Plaintiff Scott Meyer filed a Complaint (docket no. 1) alleging that the twelve defendants, including six judges and his own attorney, conspired to violate his constitutional rights. Meyer is proceeding pro se. All Defendants filed Motions to Dismiss. On August 7, 2015, Kavanaugh filed his motion. On August 10, 2015, Pederson Defendants filed their motion. On August 19, 2015, State Defendants filed their motion. On August 24, 2015, Counsel Defendants filed their motion. On September 2, 2015, Meyer filed a Motion for Leave to Amend the Complaint and a Resistance to the State Motion (docket no. 14). On September 9, 2015, State Defendants filed a Reply ("State Reply") (docket no. 16). On September 22, 2015, Meyer filed an untimely Resistance to Pederson Motion, Counsel Motion and Kavanaugh Motion (docket no. 22). On September 23, 2015, Pederson Defendants filed a Reply ("Pederson Reply") (docket no. 23). Neither Counsel Defendants nor Kavanaugh filed a reply and the time for doing so has expired. The matter is fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

Accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Meyer, the relevant facts are as follows.

### A. *Parties*

Plaintiff Scott Meyer, a resident of California, and his ex-wife, Defendant Emily Pederson, were involved in a long-running domestic relations dispute between 2010 and 2014 in the Iowa District Court. The Defendants in this action are all associated with such dispute. Vicki Pederson and Brian Pederson are the family members of Emily Pederson.[1] Attorneys Earl Kavanaugh and John Sorenson each represented Meyer at different stages of the dispute. William Morrison represented Pederson. Judge Bryan McKinley, Judge James Drew and Judge Christopher Foy of the Iowa District Court for District 2A all presided over portions of the domestic relations actions involving Meyer and Pederson. Judge Anuradha Vaitheswaran, Judge Richard Doyle and Judge Christopher McDonald of the Iowa Court of Appeals all served on the panel that affirmed the most recent Iowa District Court decision against Meyer.

### B. *Overview of the Dispute*

Meyer and Pederson resided as husband and wife in California until their divorce in 2010, when Pederson returned to her home state of Iowa and Meyer remained in California. A little more than two months after their dissolution decree was agreed upon, Meyer filed suit against Pederson in the Iowa District Court alleging that she was willfully violating the child visitation provisions of the decree. In August 2010, Judge Brian McKinley found in favor of Pederson and held that she was not in contempt of the decree. Meyer appealed the decision and the Iowa Court of Appeals affirmed. *See Pederson v.*

---

[1] The court will refer to Emily Pederson as "Pederson" throughout the instant order. Defendants Vicki Pederson and Brian Pederson will be referred to as "Vicki Pederson" and "Brian Pederson."

*Meyer*, 803 N.W.2d 128, 2011 WL 2556792 (Iowa Ct. App. June 29, 2011) (unpublished table decision).

Meyer and Pederson filed additional charges of contempt against one another over the course of the next year, and Judge James Drew entered an order modifying the provisions of their dissolution decree in October 2012. Meyer appealed the decision, and the Court of Appeals once again affirmed. *See Pederson v. Meyer*, 838 N.W.2d 681, 2013 WL 3822107 (Iowa Ct. App. July 24, 2013) (unpublished table decision). Both parties soon filed new charges of contempt against the other for willfully violating the redrawn decree. Judge Christopher Foy found Meyer in contempt and declined to find Pederson in contempt. Meyer promptly appealed. *See Pederson v. Meyer*, 856 N.W.2d 1, 2014 WL 3930462 (Iowa Ct. App. Aug. 13, 2014) (unpublished table decision). On appeal, Meyer argued that the Iowa District Court had demonstrated a pattern of bias against him since his dispute with Pederson first began in 2010. The Iowa Court of Appeals found that Meyer had failed to preserve error on that issue and affirmed the Iowa District Court's ruling. *See id.* at *1-*2. Meyer now contends that all of the named Defendants conspired together to deprive him of his federal constitutional rights during state court proceedings.

## IV. ANALYSIS

Meyer alleges that Defendants demonstrated "a pattern of bias, prejudice, discrimination, and invidiousness" against him throughout the proceedings with Pederson because he is an "outsider" from California, while Pederson is a "hometown" girl from Iowa. Complaint at 4-5. He contends that Pederson and her family are well-connected in a community where "everyone knows everyone," and that they have "powerful, rich, [and] influential friends." *Id.* at 5. Meyer argues that this resulted in a conspiracy between the Pederson family, the Iowa district and appellate court judges and his attorneys to ensure that he lost in court, depriving him of his fundamental "right to parent, . . . guaranteed by the 1st, 5th, 9th, and 14th Amendments." *Id.* at 2. Relying on 42 U.S.C. §§ 1983 and

4

1985, Meyer alleges that State Defendants violated and conspired to violate his constitutional rights and Pederson Defendants, Counsel Defendants and Kavanaugh joined in this conspiracy. *Id.* at 2-3. Meyer also contends that all Defendants conspired to violate his due process and equal protection rights under the Fourteenth Amendment. *Id.* at 3. He seeks "injunctive relief, declaratory relief, restitution, litigation costs over the course of the proceedings . . . [and] punitive damages as the court sees fit." *Id.* at 14.

### A. Standard of Review

Meyer is proceeding pro se, and, thus, his pleadings are to be liberally construed. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). Collectively, Defendants assert in their Motions to Dismiss that the court should dismiss the instant action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### 1. The 12(b)(1) standard

Rule 12(b)(1) allows a party to seek dismisal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When ruling on such motions, the court must first determine whether the motion is a "facial attack" on the complaint or a "factual attack" on the underlying facts asserted as the basis for jurisdiction within the complaint. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *accord Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack on the complaint, the factual allegations concerning jurisdiction are presumed to be true and the motion will fail unless the plaintiff fails to allege some element necessary to invoke the court's jurisdiction. *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). The court limits its review to the pleadings alone, "and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6) ((internal quotation marks omitted). In contrast, under a

factual attack on the underlying facts asserting jurisdiction within the complaint, "no presumptive truthfulness attaches to the plaintiff's allegations." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The court may undertake an independent evaluation of the disputed facts and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Therefore, "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus*, 4 F.3d at 593.

Defendants do not attack the factual basis for subject matter jurisdiction. Instead, they argue that the *Rooker-Feldman* doctrine deprives the court of jurisdiction to hear the dispute. Because *Rooker-Feldman* deprives a court of jurisdiction even if all of the factual allegations regarding the court's jurisdiction are true, that is, the Complaint raises a federal question, the court finds that the nature of the Rule 12(b)(1) attack in the Motions to Dismiss is a facial one. Accordingly, the court will accept all jurisdictional facts underlying the Complaint as true and confine its review to the face of the pleadings.

### 2. *The 12(b)(6) standard*

Rule 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" when the factual content of the pleadings "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Facts supporting only "a sheer possibility that a defendant has acted unlawfully" are insufficient. *Id*. The court is bound to accept all factual allegations in the complaint as true and construe them in favor of the non-moving party. *Palmer v. Ill.*

6

*Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012). However, the court will not "accept as true a legal conclusion couched as a factual allegation." *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (quoting *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009)) (quotation marks omitted); *accord Reynolds v. Condon*, 908 F. Supp. 1494, 1503 (N.D. Iowa 1995).

### B. *The Motions to Dismiss*

Citing Federal Rule of Civil Procedure 12(b)(6), all Defendants contend that the Complaint fails to state a claim upon which relief may be granted by not alleging sufficient facts demonstrating either constitutional violations or a conspiracy to deprive Meyer of his constitutional rights. *See* Kavanaugh Motion at 1-3; Brief in Support of the Pederson Motion (docket no. 8-1) at 7-11; Brief in Support of the State Motion (docket no. 9-1) at 7-9; Brief in Support of the Counsel Motion (docket no. 11-1) at 5-9. State Defendants also contend that they are entitled to absolute judicial immunity. Brief in Support of the State Motion at 4-6. Finally, State Defendants and Counsel Defendants argue that the court does not have subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. *See* Fed. R. Civ. P. 12(b)(1); Brief in Support of the State Motion at 6-7; Brief in Support of the Counsel Motion at 9.

#### 1. *Subject matter jurisdiction*

The premise of Meyer's suit is that the decisions made by the Iowa state courts in his child-custody dispute with Pederson were tainted by bias and prejudice and, therefore, were incorrect. While he has couched his claims in the language of federal law, it is clear that Meyer is attempting to undermine those state decisions in federal court. This is evidenced in the Complaint both where Meyer vehemently contests the merits of the custody rulings against him and by the fact that he is seeking injunctive and declaratory relief. *See* Complaint at 6-14. Providing such relief would necessarily require the court to sit as a de facto appellate court and review the rulings of the Iowa state courts, which

7

the court is forbidden to do according to both the *Rooker-Feldman* doctrine and the domestic relations exception.

Under the *Rooker-Feldman* doctrine, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Even if the state court judgment is incorrect, "an effective and conclusive adjudication" in state court is only "open to reversal or modification in an appropriate and timely appellate proceeding." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923). Moreover, the *Rooker-Feldman* doctrine applies when a "federal claim is inextricably intertwined with a state court judgment." *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 493 (8th Cir. 2000). The two are inextricably intertwined "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)).

Meyer argues that the constitutional claims in his Complaint represent "independent harms" that were never addressed or ruled upon by the state courts and that *Rooker-Feldman* therefore does not apply. Resistance at 13-14. But it is clear that the injuries he is complaining of were caused by the state court's judgment against him. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments"); *cf. Edwards v. City of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) (finding *Rooker-Feldman* does not apply when litigant's injuries were not caused by a state-court judgment). Granting Meyer monetary, injunctive or declaratory relief would necessarily require the court to find that the Iowa state courts ruled incorrectly. *See Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337, 341 (8th Cir. 2004) (noting that "[t]he type of relief the litigant seeks may indicate whether or not the claim is in fact a

challenge . . . to the actual judgment in the party's case"); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997) (stating that claims are intertwined when "the relief requested in the federal action would effectively reverse the state court decision or void its ruling"); *Newman v. State of Ind.*, 129 F.3d 937, 942 (7th Cir. 1997) (finding that a lawsuit to obtain damages caused by a state court's judgment against the plaintiff requires a premise that the state court's decisions were incorrect).

Meyer cannot simply recast his state court claims under § 1983 and § 1985 and attempt to relitigate his state court claims in federal district court. *See Prince*, 380 F.3d at 340 ("Once a party has litigated in state court . . . he 'cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section] 1983 action.'") (quoting *Bechtold*, 104 F.3d at 1065) (second alteration in original). If unhappy about the outcome of the state court proceedings, Meyer's recourse was to seek further review by the Iowa Supreme Court or the United States Supreme Court. The court has no jurisdiction to review decisions by the Iowa state courts.

Furthermore, granting Meyer the injunctive and declaratory relief that he seeks would require the court to involve itself in domestic relations matters, an area in which it has no jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that "the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Although Meyer alleges that his federal constitutional rights were violated because of local bias, his Complaint is replete with challenges to the merits of the child custody determinations made against him. For example, Meyer repeatedly contends that the Iowa District Court should have appointed a "parenting coordinator," and that such an appointment "would be in the best interests of [his son]." Complaint at 8. He argues that the findings of contempt against him have nothing to do with the care of, parenting of or visitation with of his son, and that his son "should never have been separated from his siblings." *Id.* at 10. Meyer concludes his

Complaint by stating that he "has raised three children" who are "intelligent, academically gifted, responsible, compassionate, kind individuals," and who have a close relationship with his son. *Id.* at 14. Meyer claims that "[t]his is an important factor when determinating [c]ustody," and that his ex-wife "has no track record raising children." *Id.*

It is clear to the court from the face of Meyer's Complaint that granting him relief would require the court to entangle itself in issues of state child custody law, an area in which it possesses no jurisdiction. *See Mayercheck v. Judges of the Pa. Supreme Court*, 395 F. App'x 839, 841-42 (3d Cir. 2010) (unpublished decision) (finding no jurisdiction under the domestic relations exception when a complaint brought against state judges sought declaratory relief and alleged constitutional violations during state divorce proceedings); *Mensah v. St. Joseph Cty. Family Indep. Agency*, 187 F.3d 636, 1999 WL 623733, at *1-2 (6th Cir. Aug. 11, 1999) (unpublished table decision) (finding no jurisdiction under the domestic relations exception when a litigant brought §§ 1983 and 1985 claims alleging that various parties associated with a state custody award conspired to deprive him of his parental custody); *Davison v. State of Ark.*, 989 F.2d 504, 1993 WL 48883, at *2-3 (8th Cir. Feb. 26, 1993) (unpublished decision) (finding no jurisdiction under the domestic relations exception "to hear any claim related to the division of marital assets in [the plaintiff's] divorce or the custody arrangements made in state court"). *But see Alexander v. Rosen*, 804 F.3d 1203, 1204-06 (6th Cir. 2015) (finding that the domestic relations exception did not prevent the district court from hearing claims that officials overseeing a child support case conspired against the plaintiff).

Because the court lacks jurisdiction under the *Rooker-Feldman* doctrine and the domestic relations exception, the court shall grant the Motions to Dismiss. However, although Meyer's claims are properly dismissed for lack of subject matter jurisdiction for the foregoing reasons, the court will proceed to address whether the State Defendants are

entitled to judicial immunity and whether Meyer failed to sufficiently state a claim for relief.[2]

### 2. *Judicial immunity*

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) The "long-settled" rationale behind the doctrine is to uphold the independence and impartiality of judges by ensuring

---

[2] The court notes that Meyer has asked for leave to amend his complaint. Resistance at 3. While Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires," the Eighth Circuit has held that it is not "an absolute or automatic right." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). The district courts have discretion to deny leave to amend for a variety of reasons. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065-66 (8th Cir. 2005). Meyer's motion for leave to amend was not filed separately from his Resistance, he has not identified the substance of his proposed amendments in any of his filings and has not submitted a copy of his proposed amended pleading—all violations of the court's local rules. *See* L.R. 7(e), 15. Instead, Meyer has merely requested leave to amend "to provide further evidence to support [his] claims." Resistance at 3. Because this short statement does not inform the court of the content of Meyer's amended claims or demonstrate how the amendments would remedy the numerous deficiencies of Meyer's first complaint, there is no basis to permit Meyer to amend his Complaint. *See In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884-885 (8th Cir. 2009) (affirming a denial of leave to amend a complaint when the party "never submitted a proposed amended complaint to the district court," but instead "merely included a footnote at the end of his response to [the] motion to dismiss" with a request for leave to amend); *U.S. ex rel. Lee*, 413 F.3d at 750 (holding the district court properly denied leave to amend when the plaintiff did not provide the court with any substantive details of the contents of her proposed amendment); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim."). Furthermore, even if Meyer had informed the court of the contents of his proposed amendment, the court finds that any such amendment would be futile, given that the underlying nature of Meyer's claims involve domestic relations, an area over which this court does not have jurisdiction. *See U.S. ex rel. Lee*, 413 F.3d at 749 ("Futility is a valid basis for denying leave to amend."). No amendment would be able to save Meyer's Complaint from dismissal under the domestic relations exception.

that potential exposure to liability will not cloud their judgments. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). The only requirements for immunity are that the action be "taken in the judge's judicial capacity" and be within the court's jurisdiction. *Mireles*, 502 U.S. at 11-12. Meyer's claims of constitutional violations stem entirely from the state court proceedings between him and Pederson. *See* Complaint at 6-13. State Defendants—three district court judges and three appellate court judges—were all acting within their judicial capacity when they presided over and issued rulings throughout the proceedings. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978). In addition, each of the judges had jurisdiction to hear their respective portion of the dispute. *See* Iowa Code §§ 602.5103, 602.6104(1), 602.6202 (2015); Iowa R. App. P. 6.1101(1). The court, therefore, finds that State Defendants are entitled to judicial immunity.[3] *See Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly."). Accordingly, the court shall grant the State Motion on the grounds that State Defendants are entitled to judicial immunity.

### 3. *Section 1985 conspiracy claims*

For purposes of analyzing the Section 1985 claim against Kavanaugh, Pederson Defendants and Counsel Defendants, the court will assume that subject matter jurisdiction exists. It is unclear from the Complaint whether Meyer intends to bring claims under 42 U.S.C. § 1983 or § 1985 against these remaining defendants. *See* Complaint at 2-3. However, because Kavanaugh, Pederson Defendants and Counsel Defendants are all private parties who were not acting under color of state law during the proceedings between Meyer and Pederson, the court will proceed to address Meyer's claims against

---

[3] The court is not persuaded by the plethora of arguments made by Meyer that judicial immunity should not apply in the instant action. *See* Complaint at 3; Memorandum of Authorities (docket no. 1-1) at 38-50; Resistance at 17-20.

them under § 1985 only. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation [of his federal rights] was committed by a person acting under color of state law."). As best as the court can decipher from his pleadings, Meyer alleges violations under subsection (3) of § 1985, which prohibits parties from conspiring to deprive "any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3); *see* Complaint at 2-3; Memorandum of Authorities at 7.

Successfully pleading a § 1985 conspiracy claim requires a plaintiff to "provide some facts suggesting a mutual understanding between defendants to commit unconstitutional acts." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001); *see also Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (analyzing a § 1983 claim and stating that "[a]llegations of [§ 1985] conspiracy . . . must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds'" (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam))). Meyer alleges that Defendants conspired with each other to violate his due process and equal protection rights under the Fourteenth Amendment. The thrust of his conspiracy allegations is that Pederson and her family are well-known and popular in their Iowa community, while Meyer himself is an "outsider" from California. Complaint at 5. Meyer's Complaint recites the judicial proceedings between Pederson and himself in an attempt to establish a pattern of bias against him in the Iowa courts, but his recitation merely contains legal conclusions and speculation as to why the Iowa courts ruled against him. He does not allege any specific facts suggesting how Kavanaugh, Pederson Defendants or Counsel Defendants conspired with the Iowa courts to violate his constitutional rights. *See Kurtz*, 245 F.3d at 758 (holding that "bare allegations" are insufficient to establish conspiracy); *Mayercheck*, 395 F. App'x at 843-44 (finding that a § 1985 claim alleging a conspiracy between the plaintiff's ex-wife and state court judges to deprive the plaintiff of his federal constitutional

rights during divorce proceedings was "speculative" and affirming the district court's dismissal for failure to state a claim).

In addition, conspiracy claims brought under § 1985(3) require evidence of a class-based animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996). Meyer contends that the conspiracy against him was motivated by his gender, his religion, his status as a pro se litigant, his status as an "outsider" from California and his status as a father. Memorandum of Authorities at 11. Although Meyer alludes to these different factors in his Complaint and draws the legal conclusion that he experienced discrimination because of them, he provides no evidence that such animus either existed or was in fact the reason for the actions of the alleged conspirators. *See id.* at 11-13, 29-33, Complaint at 5, 12-13. Consequently, Meyer has failed to demonstrate the class-based animus necessary to plead a conspiracy under § 1985(3). *See Andrews*, 98 F.3d at 1079-80 (stating that "to succeed on a civil rights conspiracy claim, [a] plaintiff must demonstrate discriminatory purpose in that the defendants selected the particular course of action 'because of' nor merely 'in spite of' its adverse effects upon an identifiable group" (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993)) (quotation marks omitted)).

Therefore, the court finds that, as a matter of law, Meyer's allegations are insufficient to demonstrate a § 1985 conspiracy. Accordingly, the court shall grant the Kavanaugh Motion, the Pederson Motion and the Counsel Motion on the grounds that the Complaint fails to state a claim.

### C. Sanctions for Frivolous Lawsuit

The court must also address the litigious behavior of Meyer and the long history of his claims against the Pederson family, of which this lawsuit is but the latest. Since 2010, Meyer has filed a multitude of unsuccesful charges of contempt against Pederson in Iowa District Court and has appealed to the Iowa Court of Appeals three times. Based on the court's review of these proceedings, it is clear that Meyer abused the judicial process. In its first encounter with Meyer and Pederson, the Iowa Court of Appeals specifically noted that "the absurdity of the positions taken by the parties here and with each other evidences the contentiousness of their relationship." *Pederson*, 2011 WL 2556792, at *3. On Meyer's second appeal, the Iowa Court of Appeals remarked that "Meyer's litigious nature and inability to effectively communicate are apparent from the record." *Pederson*, 2013 WL 382210,7 at *1. On Meyer's third appeal, the Iowa Court of Appeals noted once again the contentiousness of the parties and taxed the costs to Meyer. *See Pederson*, 2014 WL 3930462, at *2 n.4.

Now, Meyer has brought suit in federal court against everyone involved in those proceedings and has alleged a grand conspiracy by the judiciary of Iowa to deprive him of his federal constitutional rights. It, however, is clear that he is simply asking the court to re-decide the state court rulings in his favor. The court cannot say to what degree spite, malice or vindictiveness motivated Meyer to file this suit, but it does not doubt that it played a role given his litigious history. The Defendants have been forced to mount a costly defense in order to respond to Meyer's frivolous claims. This is unacceptable. Meyer is on notice that he may be subject to future sanctions if he persists in filing frivolous or malicious pleadings.

### V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1)   Kavanaugh Motion (docket no. 7) is **GRANTED**.

(2) Pederson Motion (docket no. 8) is **GRANTED**.

(3) State Motion (docket no. 9) is **GRANTED**.

(4) Counsel Motion (docket no. 11) is **GRANTED**.

(5) The Complaint (docket no. 1) is **DISMISSED WITH PREJUDICE**.

(6) Costs are **TAXED** against Meyer.

**IT IS SO ORDERED.**

**DATED** this 29th day of December, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA